IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KRISTOPHER BRUCE,

        Plaintiff,

  vs.                                   Civil Action 2:15-cv-982
                                          Chief Judge Sargus
                                          Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

REPORT AND RECOMMENDATION

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's *Statement of Errors*, ECF 11, the Commissioner's *Memorandum in Opposition,* ECF 17, and plaintiff's *Reply*, ECF 19.

**Background**

    Plaintiff Kristopher Bruce filed his current application for benefits[1] on November 15, 2012, alleging that he has been disabled since August 31, 2008, as the result of back problems, depression, anxiety, elbow problems, hypertension and Hepatitis C. PAGEID 295. The application was denied initially and on reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    A hearing was held on October 21, 2014, at which plaintiff,

---

[1] Plaintiff initially applied for benefits in June 2009, but did not appeal the administrative denial of that application. *PAGEID* 122-53.

1

represented by counsel, appeared and testified, as did Ronald Malik, who testified as a vocational expert. In a decision dated November 13, 2014, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from the date that his application for benefits was filed through the date of the administrative decision. PAGEID 70-84. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 19, 2015. PAGEID 56-61.

Plaintiff was 45 years of age on the date that he filed his application. PAGEID 83, 243. He has a high school equivalent education, PAGEID 83, 296, and has not engaged in substantial gainful activity since the date on which his application for benefits was filed. PAGEID 75.

**Administrative Hearing**

Plaintiff testified at the administrative hearing that he experiences pain in his lower and middle back. PAGEID 96. The pain shoots down to his toes on the left. He also experiences left foot drop, which causes difficulty, especially with stairs. *Id.* He ordinarily uses a cane for walking, although he could not afford to replace his cane when it broke shortly before the administrative hearing. *Id.* He suffers "flare-ups" of pain as often as five (5) times per week. PAGEID 100. Sitting in a recliner with a heating pad helps with the pain; medication also helps a "great deal" but does not completely alleviate the pain. PAGEID 98.

Plaintiff can no longer ride motorcycles or go camping. PAGEID

2

99. He cannot lift his grandchildren. *Id.* He estimated that he can stand 45-60 minutes before having to change positions. PAGEID 102. His surgeon told him to lift no more than a gallon of milk. *Id.*

Plaintiff also testified to depression and agoraphobia. PAGEID 103, 106. He has difficulty even getting up and dressed, he does not want to leave his residence, he has difficulty breathing when in large crowds, and he has no friends. PAGEID 104-06. He also has difficulty concentrating. PAGEID 108.

Plaintiff goes grocery shopping with his sister, but must use an electric cart. PAGEID 101-02. He is able to care for his personal needs, PAGEID 103, and keeps his residence "clean, safe, and straight." PAGEID 99.

Asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge, the vocational expert testified that such a claimant could perform work that exists in substantial numbers in the state and national economies, including such representative jobs as small product assembler and electronics assembler. PAGEID 115-17.

**Medical Evidence**

<u>Physical Impairments</u>

Plaintiff underwent a laminectomy and fusion at L5-S1 in 2001. PAGEID 552. In 2009, plaintiff's primary care physician, Robert Gotfried, D.O., completed a medical source statement in which he diagnosed generalized anxiety disorder, hypertension, hyperlipidemia, and history of lumbar fusion. PAGEID 558-60. According to Dr.

3

Gotfried, plaintiff can stand/walk for 4 hours in an 8-hour workday, for 3 hours without interruption, and can sit for 8 hours in an 8-hour workday; he can lift/carry up to 20 pounds frequently and up to 50 pounds occasionally; he is moderately limited in his ability to reach, and is markedly limited in his ability to push/pull and bend.  Dr. Gotfried characterized plaintiff's "limitations a[s] psychiatric" and plaintiff as "unemployable." Id.

In January 2012, plaintiff presented to an emergency room with complaints of severe back pain following a fall. PAGEID 439-50. It was noted that plaintiff walked with a cane. On clinical examination, plaintiff exhibited right and left paravertebral muscle spasm, moderately abnormal Patrick test on the left, and moderately abnormal straight leg raising on the left. There was decreased range of motion of the lumbar spine. *Id*.

A January 2012 CT scan revealed degenerative changes in the disc spaces and facet joints and narrowing of the neural foramina bilaterally at L1-2, L2-3, L3-4, and especially L4-5. PAGEID 345-46. There were no disc protrusions. *Id*. A lumbar myelogram showed no significant dural distortion or canal stenosis, but there was questionable thickening of the left S1 nerve root, and evidence of a prior decompressive laminectomy and posterior fusion at L5-S1. PAGEID 345.

F. Paul DeGenova, D.O., an orthopaedic specialist, first examined plaintiff in January 2012. PAGEID 358-59. Plaintiff reported that he had done "pretty well" after his 2001 surgery, although he continues

4

to suffer pain (which he rated as 10 on a 10-point scale, PAGEID 358) to the point that is unable to work. He complained of pain in his low back, left buttock, and the posterior aspect of the left thigh and lateral border of the left calf in the L5 distribution.  He also complained of numbness in the left foot and ankle.  Dr. DeGenova described plaintiff's gait as "very antalgic." PAGEID 258.  Heel walk was weak on the left; toe walk was strong bilaterally. Plaintiff had difficulty with forward flexion. Straight leg raising was positive on the left and negative on the right. *Id*. The following month, Dr. DeGenova noted no change in plaintiff's symptoms. Dr. DeGenova diagnosed left foot drop, herniated disk at L4-5 with bilateral foraminal stenosis, degenerative disk disease from L3 to L5, and status post decompression and fusion at L5-S1. He recommended physical therapy and epidural steroid injections. PAGEID 357.

Amish Patel, D.O., a pain specialist, saw plaintiff in May 2012. Plaintiff complained of low back pain, which he rated as 10 on a 10-point scale and which worsens with standing and walking. Plaintiff also complained of bilateral lumbosacral discomfort that is worse with extension and side bending bilaterally.  Dr. Patel suggested further evaluation of plaintiff's lumbar facetogenic pain syndrome emanating from the L4-5, L5-S1 levels bilaterally.

In October 2012, plaintiff reported to Lori Arnett, a certified nurse practitioner at the Holzer Clinic, that he experiences low back pain that radiates to below the left knee.  He rated his pain as 8 on a 10-point scale. PAGEID 458. Walking and standing cause the pain to

5

worsen. Brennan Smith, D.O., also of Holzer Clinic, diagnosed lumbosacral disc degeneration, lumbar neuritis, and swing phase foot drop on the left. PAGEID 464.

State agency physician James Cacchillo, D.O., reviewed the record in March 2013 and noted that the record confirmed an antalgic gait and station, decreased or no sensation, and normal muscle strength. PAGEID 164. According to Dr. Cacchillo, plaintiff has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk for 4 hours and sit for 6 hours in an 8-hour workday. PAGEID 164. Plaintiff would be limited to occasional pushing and/or pulling (including operation of foot pedals) in the lower left leg because of his chronic back pain with left leg pain and foot drop. PAGEID 165. Plaintiff could never climb ladders, ropes or scaffolds; he could occasionally kneel, crouch or crawl, stoop and climb ramps or stairs. *Id.* He should avoid concentrated exposure to extreme cold and heat and vibration and should avoid all exposure to hazards such as machinery and heights. PAGEID 165-66.

State agency physician Dimitri Teague, M.D., reviewed the file in July 2013 and affirmed Dr. Cacchillo's assessment. PAGEID 180-82.

Eskender Getachew, M.D., a neurologist, treated plaintiff from June through August 2014. PAGEID 552-57, 580-82. Dr. Getachew diagnosed lumbar radiculitis and prescribed medication. By August 2014, plaintiff continued to complain of aching pain, radiating above the knee, but reported "great progress" in his symptoms. On examination, Dr. Getachew noted a full range of motion of the lumbar

6

spine, no point tenderness of the spine and sacroiliac joints, and negative straight leg raising. Neurological findings were normal. PAGEID 580-82.

Mental Impairments

Plaintiff underwent a mental health evaluation at the Tri-County Mental health & Counseling Services, Inc. ["Tri-County"], in July 2009. PAGEID 569-70. Plaintiff reported a history of marijuana, opioid, and alcohol use and related criminal charges. He had attended outpatient drug and alcohol treatment sessions on a number of occasions, and prior mental health treatment for depression and anxiety. On examination, plaintiff's mood was depressed and anxious; his affect was appropriate. Intelligence was estimated as average, with judgment intact. He was oriented to place and person. He reported general paranoia and some suicidal ideation, but without plan, intent or history of attempt. He also reported panic attacks. Terry Hayes, Ph.D., diagnosed opioid dependence, mood disorder, nos, and anxiety disorder, nos, but was uncertain whether plaintiff's "Major Depression [is] independent of his drug use or due to his drug use." PAGEID 570. Dr. Hayes also completed mental functional capacity assessments in July 2010 and December 2011, in which he opined that plaintiff is moderately to markedly limited in his understanding and memory, concentration and persistence, social interactions, and adaptation. He is markedly limited in his ability to interact appropriately with the general public. PAGEID 561. According to Dr. Hayes, plaintiff is "unemployable." PAGEID 561, 563.

Plaintiff was seen at O'Bleness Family Medicine in September 2012 for, *inter alia*, complaints of anxiety and panic attacks. PAGEID 428-31. Plaintiff declined therapy at that time. PAGEID 429-40.

Gary Sarver, Ph.D., conducted a consultative examination of plaintiff at the request of the state agency in April 2013. PAGEID 471-78. Plaintiff reported that his back pain and transportation difficulties keep him from working. PAGEID 471. According to Dr. Sarver, plaintiff's independent living skills were adequate: he cooks, washes dishes, does his laundry and shops. His sister takes care of his bills. PAGEID 472. Plaintiff reported that he got along with his supervisor, coworkers and the public. PAGEID 473. He spends his day watching television. PAGEID 474. Dr. Sarver diagnosed opioid abuse, pain disorder with psychological factors/general medical condition, an adjustment disorder with mixed anxiety and depressed mood, and a personality disorder, nos. Dr. Sarver assigned a Global Assessment of Functioning score of 55. PAGEID 477. According to Dr. Sarver, plaintiff can understand, remember, and carry out simple job instructions; his depression may episodically attenuate his capacity to carry out complex job instructions. His ability to maintain attention, concentration, persistence and pace sufficient to perform simple tasks, to perform multi-step tasks, to respond appropriately to supervision and coworkers in a work setting, and to respond appropriately to work pressures in a work setting was moderately impaired. Plaintiff would have difficulty organizing, structuring, and working toward goals, containing his anger, managing his

8

frustration and controlling his impulses. PAGEID 478.

In April 2013, plaintiff reported to a counselor at Tri-County that he experiences "chest pains" when he is anxious. Diagnoses included major depressive disorder, panic disorder without agoraphobia, and opiate dependence. PAGEID 482.

That same month, Caroline Lewin, Ph.D., reviewed the record for the state agency, PAGEID 155-68, and opined that plaintiff is moderately restricted in his activities of daily living, and has moderate difficulty in maintaining social functioning and concentration, persistence and pace. PAEID 163. Plaintiff's pain disorder and depression might episodically attenuate his capacity to perform multi-step tasks. He is likely to experience episodic difficulty in adaptively managing normative work pressures. He can perform tasks in settings that are not fast-paced and where there are no strict production standards/quotas. PAGEID 167. He can occasionally interact with others on a superficial basis. PAHEID 168.

Irma Johnston, Psy.D., reviewed the record for the state agency in July 2013 and essentially affirmed Dr. Lewin's assessment. PAGEID 172-84.

Administrative Decision

The administrative law judge characterized plaintiff's severe impairments as degenerative disc disease of the spine, depression, anxiety, and history of substance abuse. PAGEID 754. The administrative law judge found, further, that plaintiff does not suffer an impairment or combination of impairments that meets or

9

medically equals a listed impairment. In this regard, the administrative law judge considered, but rejected, Listings 1.04, 12.04, 12.06, and 12.09. PAGEID 76-77. According to the administrative law judge, plaintiff retains the RFC to

> perform light work . . . except that he can sit, stand, or walk for no more than 60 minutes at one time and after doing so would need to assume a different position for up to 5 minutes before resuming the prior position and while alternating positions in this ma[nn]er would not need to abandon his work station or lose track of his assigned job duties; can never climb ladders, ropes, or scaffolds, can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; can never walk on uneven, wet, or vibrating terrain and needs to use a cane when walking more than 5 minutes; can have no concentrated exposure to extreme heat and extreme cold or unguarded hazardous machinery; should not be exposed to workplace hazards, including no driving, operating moving machinery, or working around unprotected heights, exposed flames, or unguarded large bodies of water; can perform simple, routine, repetitive tasks with simple decision making and occasional or minor changes in the work setting with the exercise of no more than simple judgment; and cannot perform any direct public service work, but can tolerate brief and superficial interaction with the public, coworkers, and supervisors.

PAGEID 77. In making this finding, the administrative law judge accorded "great" weight to the opinion of the consultative psychological examiner, Dr. Sarver, and "some" weight to the opinion of Tri-County psychologist, Dr. Hayes. The administrative law judge also accorded "some" weight to the physical RFC assessment of the state agency reviewing physician, Dr. Cacchillo, and to the mental RFC assessment of the state agency reviewing psychologist, Dr. Lewin. PAGEID 80, 81. The administrative law judge gave "little" weight to the opinion of plaintiff's treating physician, Dr. Gotfried. PAGEID

10

80.

Relying on the vocational expert's testimony, the administrative law judge found that plaintiff's RFC permits him to perform jobs that exist in significant numbers in the national economy. PAGEID 83. The administrative law judge therefore concluded that plaintiff was not disabled with the meaning of the Social Security Act at any time between the date of his application for benefits and the date of the administrative decision. PAGEID 84.

**Standard**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. (1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d

11

1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

**Discussion**

In his *Statement of Errors*, plaintiff challenges the administrative law judge's finding that plaintiff's physical impairments neither meet nor equal a listed impairment, contends that the administrative law judge failed to fully develop the record when he failed to secure clinical notes from the Hopewell Health Centers, Inc., and argues that the administrative law judge should have secured the testimony of a medical expert at the administrative hearing to assist in the evaluation of the combination of plaintiff's physical and mental impairments. Because the Court concludes that plaintiff's first argument is meritorious, the Court will not address the remaining two arguments.

### Listing 1.04A

Plaintiff challenges the administrative law judge's finding that plaintiff's degenerative disc disease with foot drop neither meets nor medically equals a listed impairment. At Step 3 of the sequential evaluation of disability, a claimant will be found disabled, regardless of his age, education, or work experience, if he has an impairment that meets or equals one of the Commissioner's listed impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. In order to establish that an impairment meets a listed impairment, a plaintiff must establish that his impairment meets all of the specified criteria of the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no

12

matter how severely, does not qualify." *Id*. at 530. In order to establish that an impairment equals a listed impairment, a plaintiff must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531. (emphasis in original). It is not enough for a plaintiff to argue that the overall functional impact of his impairment is as severe as that of a listed impairment. *Id*. at 351.

Listing 1.04 addresses disorders of the spine, including degenerative disc disease. The listing requires that the condition result "in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. The condition must also be accompanied by additional findings, as specified in Listing 1.04A, B, or C. Moreover, the findings must be based on objective observation and, "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." Listing 1.00D

Plaintiff specifically invokes Listing 1.04A, which requires:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Plaintiff argues that, because the record documents compromise of a nerve root and nerve root compression resulting in distribution of pain, limitation of motion, motor loss and positive straight leg raising test, the administrative law judge should have found him disabled at Step 3 of the sequential evaluation.

13

The administrative law judge referred only to "Listing 1.04" and concluded that plaintiff's back impairment neither meets nor equals that listing:

> Despite the claimant's representative's arguments, I find that there is no evidence of a listing level impairment with consideration given to this listing or any of the other listed impairments identified in 20 CFR part 404, Subpart P, Appendix 1. ([Exhibit]B10(E). While there are some sporadic findings consistent with the requirements of Listing 1.04, the findings are not consistently noted in the records. Thus, I find that the claimant does not manifest clinical signs and findings that meet or equal the specific criteria of any of the listings. In reaching this conclusion, the opinions of the State agency consultants have been considered. These medical professionals have evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 416.927 and Social Security Rule 96-5p).

PAGEID 76. Nowhere did the administrative law judge explain his statement that the "findings consistent with the requirements of Listing 1.04" are "sporadic" and "not consistently noted in the records." This Court is therefore unable to evaluate the administrative law judge's finding in this regard. It is unclear whether the administrative law judge intended to use the term "sporadic" as the equivalent of the term "intermittent" as used in Listing 1.00D; it is equally unclear whether the administrative law judge considered that any inconsistency of findings in the record might reflect improvement in a condition that could otherwise form the basis of a closed period of disability. Moreover, there is no evidence in the record that the state agency reviewing physicians, Drs. Cacchillo and Teague, expressly considered Listing 1.04A. *See* PAGEID

14

162-66, 178-82.

Under these circumstances, then, the Court concludes that the matter must be remanded to the Commissioner for further evaluation of plaintiff's back impairment by reference to Listing 1.04.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be reversed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be remanded for further proceedings consistent with the foregoing.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976,

15

984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

                                             *s/Norah McCann King*
                                              Norah M$^c$Cann King
January 5, 2016                United States Magistrate Judge